UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────────
│ USDS SDNY
│ DOCUMENT
│ ELECTRONICALLY FILED
│ DOC #: _____
│ DATE FILED: 7/1/09
└──────────────────────────────────────
```

LESLIE MUGAVERO,

                        Plaintiff,

            -against-

ARMS ACRES, INC. and FREDERICK
HESSE, M.D.,

                        Defendants.

ORDER

03 Civ. 05724 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pending before the Court are the parties' in limine motions (Docket Nos.

61, 63, 65, 66, 69, and 72).  For the reasons stated below, the motions are granted in part

and denied in part.

I.      **PLAINTIFF'S *IN LIMINE* MOTIONS**

Plaintiff has moved in limine:  (1) to exclude the testimony of Carol

Croghan, Cari Doyen, Margaret Hutcoe, Elizabeth Jermyn, Sally Terlizzi and Katie

Vecchia concerning complaints they made about Plaintiff (Pltf. Br. (Doc. 71) at 1-2);

(2) to exclude a document produced on June 2, 2009, which Defendants state is the

complaint filed against Plaintiff by Defendant Hesse with the New York Office of

Professional Discipline ("OPD") on August 19, 2002, and any related testimony by

Vincent Volaro, an OPD investigator (Pltf. 6/22/09 Ltr. at 1); and (3) to exclude two

witnesses, Vivian MacMillan and Jennifer Cowalowsky, who were not identified by

Defendants during discovery (Pltf. Opp. Br. (Doc. 82) at 7).

A.    **Testimony by Witnesses Who Complained About Plaintiff**

Plaintiff argues that the testimony of the six proposed witnesses concerning complaints against her should be excluded under Rule 403 because their testimony will be cumulative and irrelevant insofar as it is unrelated to any of the formal discipline she received.  (Pltf. Br. (Doc. 71) at 4-6)  Defendants argue that the proposed testimony is relevant to show that Plaintiff's performance problems increased during the 1998-2001 time period and that she was not similarly situated to other employees because of the nature of her performance problems.  (Def. Br. (Doc. 79) at 2-3)  However, Defendants state that they will not offer witnesses concerning the three earliest complaints (Croghan, Doyen and Jermyn) if Plaintiff does not object to admitting their written complaints.  (Id. at 15)

Contrary to Plaintiff's argument, evidence concerning complaints by other employees is probative because Plaintiff's May 3 written warning (drafted in late April 2002) – the second adverse action at issue here – included among Plaintiff's alleged performance problems "numerous patient and staff complaints regarding unprofessional behavior" and "On-Call performance problems."  (Summ. Judg. Op. (Doc. 49) at 7)  If, however, Plaintiff does not dispute that the complaints were made and does not object to the admission of the proposed witnesses' written complaints, testimony from all six witnesses may well be cumulative.  Therefore, the Court will reserve decision on this issue until it is clear whether the parties can reach agreement concerning the admissibility of the written complaints.

### B.   OPD Complaint and Volaro Testimony

Plaintiff objects that Hesse's written complaint to the OPD, dated August 19, 2002, should be excluded because it was not produced during discovery and was obtained informally by Defendants from Vincent Volaro, an OPD employee, after Plaintiff had failed in her efforts to obtain a copy of the complaint from the OPD. (Pltf. 6/22/09 Ltr. at 2-5) Defendants contend that they did not produce the document during discovery because they only recently received it from Volaro. (Def. 6/25/09 Ltr.)

Under Rule 37 of the Federal Rules of Civil Procedure, a party may not use at trial evidence that it failed to disclose during discovery unless the failure was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Even if the failure to disclose was not substantially justified or was harmless, the Court must consider the following four factors in determining whether to preclude the evidence: "(1) the explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) prejudice if the evidence were not precluded, and (4) the possibility of a continuance." DeSantis v. Deutsche Bank Trust Co. Americas, Inc., No. 05-Civ.-10868(DC), 2009 WL 66351, at *4 (S.D.N.Y. Jan. 9, 2009).  The same test applies both to the preclusion of documents and the preclusion of testimony from a witness who was not properly disclosed during discovery. See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

Defendants have not offered a good reason for failing to disclose the August 19, 2002 OPD complaint.  They rely on the fact that the document was not in their possession during discovery, but have not offered any explanation for why they could not have taken the steps that recently led them to obtain the document during the

3

discovery period. (Def. 6/25/09 Ltr. at 4)  On the other hand, Plaintiff has not identified

any prejudice she will suffer if the document is admitted, other than the possibility that

the date on the document will affect her right to recover punitive damages for Hesse's

conduct in making the complaint.[1]  (Pltf. 6/22/09 Ltr. at 6)  Plaintiff's concern is based on

the Court's ruling that she cannot recover punitive damages for adverse actions taken

after August 6, 2002.  However, there is evidence in the record that Hesse initiated the

process of making a complaint in July 2002, and neither party has addressed whether

Plaintiff would still be entitled to punitive damages on that basis.  Because Plaintiff has

not shown that she will be prejudiced by the admission of the August 19, 2002 complaint,

the Court will not exclude the document.

      Plaintiff also seeks to exclude the testimony of the OPD investigator from

whom Defendants received the August 19, 2002 complaint, Vincent Volaro, under Rule

403.  Defendants state that Volaro "will testify about the factual basis for his

investigative findings and the OPD's conclusion that sufficient evidence of Plaintiff's

professional misconduct existed to warrant the conduct of a disciplinary proceeding,"

which they argue is relevant to the issue of whether Hesse "had a legitimate, good-faith

basis for filing his complaint."  (Def. 6/25/09 Ltr. at 7)

      It is entirely unclear from Defendants' description what exactly Volaro

will testify to.  Defendants have not disclosed what investigation Volaro conducted, what

his findings were, whether OPD ever conducted a disciplinary proceeding, whether OPD

made its own findings and, if so, whether those findings relied on and were consistent

---

[1]  The August 19, 2002 OPD Complaint is nearly identical to a draft complaint Hesse
prepared in July 2002.  Plaintiff received a copy of the July 2002 draft letter to OPD prior
to the time the parties briefed summary judgment in 2006.

with Volaro's investigative findings.  At present, it is not clear whether Volaro could

offer testimony tending to show that Hesse "had a legitimate, good-faith basis for filing

his complaint."  That determination primarily turns on whether the allegations in Hesse's

complaint were true and fairly presented.  The parties are directed to address all of these

issues in a supplemental letter brief due July 6, 2009.  Until then, the Court reserves

decision on this issue.

It is worth noting now, however, that testimony concerning factual

determinations made by the OPD – e.g., Volaro's or another investigator's conclusions

about whether Plaintiff actually engaged in misconduct and made the medical errors

Hesse reported in his complaint – raises serious concerns.  Such testimony would present

conclusions concerning fact questions that are for the jury to decide, and might be more

prejudicial than probative because of the risk that the jury would be unduly influenced by

the OPD's findings.  Cf. Dodson v. CBS Broadcasting Inc., 423 F. Supp. 2d 331, 334-35

(S.D.N.Y. 2006) (excluding EEOC determination of probable cause on the ground that it

had "low probative value" – particularly because evidence before jury and EEOC was not

the same – and there was a "risk that the jury w[ould] be unduly influenced despite any

limiting instruction").  On the other hand, Plaintiff may open the door to such testimony

by suggesting that the jury should infer that Hesse's charges were unfounded because

OPD did not discipline her.

The Court urges the parties to consider entering into a stipulation addressing the outcome of Hesse's complaint to the OPD.[2]

### C.   Testimony of MacMillan and Cowalowsky

Plaintiff requests that Vivian MacMillan and Jennifer Cowalowsky be precluded from testifying because they were not identified in Defendants' discovery responses.  (Pltf. Opp. Br. (Doc. 82) at 7)  According to Plaintiff, Vivian MacMillan is the roommate of one of Plaintiff's former co-workers, nurse Joanne Callahan, and Jennifer Cowalowsky worked with one of Plaintiff's doctors and performed therapy on Plaintiff.  (Id.)  There appears to be no good reason for Defendants' failure to disclose these witnesses.  However, because Defendants have not had an opportunity to explain the significance of their testimony, the Court will reserve decision on Plaintiff's request.

## II.   DEFENDANTS' *IN LIMINE* MOTIONS

Defendants have moved in limine to:  (1) preclude Plaintiff from offering co-worker testimony concerning her character and job performance (Doc. 72); (2) exclude Plaintiff's EEOC charges and Arms Acres' position statements if offered to prove the truth of the matter asserted (Doc. 69); (3) exclude various witnesses and documents not identified during discovery (Doc. 65); (4) exclude evidence regarding alleged discriminatory or harassing treatment or current or former Arms Acres employees (Doc. 61); and (5) exclude evidence regarding certain allegedly retaliatory conduct (Doc. 63).

---

[2]  One possible formulation is as follows:  "OPD closed its investigation without taking any disciplinary action against Mugavero and without determining the validity of the allegations set forth in Hesse's complaint."

### A.   Co-Worker Testimony Concerning Plaintiff's Character

Defendants have moved to preclude Plaintiff from offering testimony concerning her "character, job performance, employment qualifications or opinions regarding the validity of Plaintiff's claims, proffered by current or former employees of Arms Acres who did not supervise her work or participate in the decisions surrounding the termination of her employment." (Def. Br. (Doc. 74) at 6-7)

While it would be improper for Plaintiff to offer witnesses to testify as to their general opinion, based on "subjective impressions," concerning the motivation for the alleged adverse actions taken against Plaintiff, it would not be improper for her to offer co-worker testimony concerning relevant facts as to which the witnesses have personal knowledge. For instance, because Defendants have put into issue whether Plaintiff was difficult to work with, co-worker testimony concerning that subject would be probative. As another example, it would be proper for Plaintiff to offer co-worker testimony concerning whether, in their experience, Arms Acres policies at issue – such as the policy against consuming alcohol while on-call – were enforced against employees other than Plaintiff. See Hester v. BIC Corp., 225 F.3d 178, 184 (2d Cir. 2000) (testimony of co-workers that decision-maker was motivated by race discrimination was inadmissible because it was based on their "subjective impressions" and witnesses had no personal knowledge of decision-making process or plaintiff's performance of her job duties); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 910-12 (2d Cir. 1997) (district court did not err in allowing witness to testify that age was a factor in plaintiff's termination where witness testimony was focused on facts concerning age of workforce and decision-making concerning plaintiff as to which witness had personal knowledge);

7

Bazile v. New York City Housing Auth., No. 00-Civ.-7215(SAS), 2002 WL 171690, at
*11 n.21 (S.D.N.Y. Feb. 1, 2002) ("While neither [other employees] . . . nor any lay
witness may offer her opinion as to whether [plaintiff] . . . was treated differently on the
basis of race, [other employees] . . . may certainly offer their observations based on
personal knowledge.").

Therefore, the Court will reserve decision as to whether particular
testimony will be excluded until it is possible to determine whether a given witness will
offer fact testimony based on personal knowledge or improper lay opinion testimony.

**B.**      **EEOC Charges and Position Statements**

Defendants argue that Plaintiff's EEOC charges, a letter Plaintiff
submitted to the EEOC in May 2002, and the responsive position statements that
Defendants submitted to the EEOC should be excluded because: (1) they are
inadmissible hearsay if offered for the truth of the matter asserted, and (2) under Rule
403, they are more prejudicial than probative. (Def. Br. (Doc. 70) at 2-5; Def. Br. (Doc.
67) at 9)

Defendants' position statements – if offered by Plaintiff – are not hearsay
because they are admissions. See Fed. R. Evid. 801(2)(D). Defendants also argue,
however, that the position statements should nonetheless be excluded under Rule 403,
asserting that they are "highly prejudicial" because they were made prepared prior to
discovery. (Id. at 4) The only cases Defendants cite in this regard, however, relate to the
admissibility of EEOC determinations, not documents submitted to the EEOC by a party
and now offered against that party. (Id.) Defendants have not identified any specific
prejudice they would suffer if their own statements to the EEOC concerning Plaintiff's

8

charges were admitted into evidence.  Accordingly, Defendants' motion to exclude their position statements is denied.

Plaintiff's EEOC charges and her May 2002 letter to the EEOC (and Defendants' position statements) might also be offered for non-hearsay purposes – for example, to establish the dates Plaintiff engaged in protected activity and to establish the dates Defendants had knowledge of Plaintiff's EEOC charges.  Therefore, the Court reserves decision on whether to exclude the EEOC charges and letter, and urges the parties to consider stipulating to facts such as when Plaintiff filed the charges and submitted her May 2002 letter, and the dates when Defendants were on notice of each instance of protected activity.

C.      **Witnesses Not Disclosed During Discovery**

Defendants have moved to preclude the following five witnesses from testifying on the ground that Plaintiff did not identify them in her initial disclosures or discovery responses:  Plaintiff's husband, Peter Mugavero; Plaintiff's doctor, David A. Weinshel, M.D.; and Mary Nickerson, Maryanne Opher, and Ann Rella.  (Def. Br. (Doc. 67) at 2)  Plaintiff has represented that Nickerson, Opher and Rella – all of whom are Defendants' employees, and two of whom are merely records custodians – are rebuttal or impeachment witnesses who she might not call to testify.  (Pltf. Opp. Br. (Doc. 82) at 6)  Therefore, the Court will reserve decision as to those witnesses.

With respect to Peter Mugavero and Dr. Weinshel, Defendants argue that they would be prejudiced if the witnesses were allowed to testify because they have not been deposed.  (Def. Br. (Doc. 67) at 2)  Plaintiff argues that her failure to disclose their identities was harmless because Defendants knew that Peter Mugavero and Dr. Weinshel

9

had knowledge concerning her claims. (Pltf. Opp. Br. (Doc. 82) at 3-6)  For instance, Defendants deposed Plaintiff concerning Dr. Weinshel's treatment of her and obtained medical records bearing his name during discovery. (Id. at 5)  Defendant Hesse also had personal knowledge that Peter Mugavero was Plaintiff's husband. (Id. at 4)

"[A] failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial." Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., No. 01-Civ.-1047(AJP), 2002 WL 31108380, at *2 (S.D.N.Y. Sep. 23, 2002) (quoting 6 Moore's Federal Practice § 26.27[2][d] at 26-93). In this case, because Defendants had reason to know during the discovery period that Peter Mugavero and Dr. Weinshel might have information relevant to Plaintiff's damages claims, her failure to disclose their identity in her discovery responses was harmless, and Defendants' motion to preclude them from testifying is denied. Id.; see also Morgenstern v. County of Nassau, No. 04-Civ.-0058(JS)(ARL), 2008 WL 4449335, at *2 (E.D.N.Y. Sep. 29, 2008) (finding failure to disclose witness harmless, and refusing to exclude affidavit, where opposing party "was well aware of" the witness's "role in th[e] lawsuit" and his "personal knowledge of" relevant facts).

### D.   Documents Concerning Damages

Defendants have moved to exclude seven employment advertisements and documents concerning medical expenses that Plaintiff failed to produce during the discovery period. (Def. Br. (Doc. 67) at 4-6, 8-9)  Defendants argue that they have been prejudiced by Plaintiff's failure to produce these documents in that they were not able to examine Plaintiff "with specificity" concerning her damages and mitigation efforts at her

deposition.  (See id. at 6)  Plaintiff has not offered an explanation for her failure to

produce these documents in a timely manner, particularly after she testified that the

documents existed at her deposition, and Defendants specifically requested that she

produce them.  Because Defendants were prejudiced by Plaintiff's failure to produce the

documents; because Plaintiff has not offered any explanation for her failure; and because

the documents do not appear to have great significance to Plaintiff's case – Plaintiff can

offer her own and her husband's testimony concerning her mitigation efforts and medical

expenses – Defendants' motion to exclude these documents is granted.

### E.    Treatises

Defendants have moved to exclude two treatises listed by Plaintiff as

exhibits in the Joint Pre-Trial Order:  the "Physicians' Prescribing Reference" and the

"Nurse Practitioner's Prescribing Reference."  (Def. Br. (Doc. 67) at 4)  In response,

Plaintiff asserts that the treatises should not be excluded because they are not hearsay

under F.R.E. 803(18).  (Pltf. Opp. Br. (Doc. 82) at 9)  Rule 803(18), however,

contemplates the admission of statements in treatises only through the testimony of an

expert witness.  See Fed. R. Evid. 803(18) (defining as non-hearsay, "[t]o the extent

called to the attention of an expert witness upon cross-examination or relied upon by the

expert witness in direct examination, statements contained in published treatises,

periodicals, or pamphlets on a subject of history, medicine, or other science or art,

established as a reliable authority by the testimony or admission of the witness or by

other expert testimony or by judicial notice. If admitted, the statements may be read into

evidence but may not be received as exhibits.").  Because Plaintiff does not have an

expert witness, Rule 803(18) does not apply here.  Moreover, Rule 803(18) explicitly

states that the statements themselves, e.g., excerpts from treatises, may not be received as exhibits. Therefore, Defendants' motion to exclude the treatises is granted.

**F.    Affidavits**

Defendants have moved to exclude affidavits of Sofia Umali, Steven Herzenberg and Plaintiff, who are all listed by Plaintiff as trial witnesses. (Def. Br. (Doc. 67) at 9-10) This issue is moot, because Plaintiff has stated that she will not introduce these affidavits if the witnesses testify. (Pltf. Opp. Br. (Doc. 82) at 11)

**G.    Statutes and Regulations**

Defendants have moved to exclude regulations issued under HIPAA, guidelines of the New York State Office of Alcoholism and Substance Abuse Services, and New York state laws listed by Plaintiff as exhibits in the Joint Pre-Trial Order, arguing that it would be improper to provide the jury with such legal material. (Def. Br. (Doc. 67) at 10) In her opposition papers, Plaintiff does not address the New York state law and guidelines; accordingly, Defendants' motion to exclude those documents is granted.

With respect to the HIPAA regulations, Plaintiff argues that they are relevant if Defendants persist in arguing, in connection with their after-acquired evidence defense, that she violated HIPAA in copying patient chart information. (Pltf. Opp. Br. (Doc. 82) at 9) However, the Court will not permit argument or evidence concerning whether Plaintiff violated HIPAA, on the ground that such argument or evidence is not relevant to any issues that the jury will decide. The after-acquired evidence defense limits remedies that are available to a plaintiff who is found to have engaged in conduct during the course of her employment that would have resulted in her termination at that

12

time had the defendants known of the conduct.  Sigmon v. Parker Chapin Flattau &
Klimpl, 901 F. Supp. 667, 682-83 (S.D.N.Y. 1995).  Thus, the question for the jury here
is whether, prior to October 25, 2002, Arms Acres would have fired an employee solely
because she took notes concerning patient medical charts for her own use.  As Plaintiff
has pointed out, HIPAA's privacy rule did not come into effect until April 2003, see 45
C.F.R. § 164.534, months after Plaintiff's employment was terminated.  Therefore,
HIPAA cannot be relevant to Defendants' after-acquired evidence defense.  Defendants'
motion to exclude the HIPAA regulations is granted.

### H.    Evidence of Discriminatory Treatment of Other Employees

Defendants argue that evidence concerning complaints of harassment by
Dr. Gutierrez (and warnings issued to Dr. Gutierrez) should be excluded, except as
necessary to establish that Plaintiff engaged in protected activity.  (Def. Br. (Doc. 62) at
1-5 & n.2)  Plaintiff largely agrees, acknowledging that the only relevant incident of
harassment here is Gutierrez's alleged harassment of Marie McArdle, which led to
Plaintiff's protected activity.  (Pltf. Opp. Br. (Doc. 62) at 4-5)  Plaintiff further agrees that
even as to the alleged harassment of McArdle, all documents except those that relate to
Plaintiff's participation in the investigation should be excluded.  (Id. at 3-5)

Therefore, evidence concerning Gutierrez's harassment of any employee
other than McArdle will be excluded.  Moreover, evidence relating to the investigation of
McArdle's complaint will be excluded, except to the extent it relates to Plaintiff's
participation in the investigation.  However, Plaintiff will be permitted to offer evidence
probative of whether (and when) she engaged in protected activity by reporting
Gutierrez's harassment of McArdle.  To show that she engaged in protected activity,

13

Plaintiff must show that "the employer . . . understood, or could reasonably have understood, that . . . [her] opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). Defendants disputed this element of Plaintiff's claim in their summary judgment motion. (See Summ. Judg. Op. at 16-17)  Similarly, at summary judgment, the parties disputed whether Defendants made a good faith effort to enforce their policy against sexual harassment (which also allegedly prohibited retaliation) prior to August 6, 2002. (Mugavero Summ. Judg. Op. at 47-48; McArdle Summ. Judg. Op. at 27)  If Defendants dispute these issues at trial, Plaintiff will be permitted to respond by offering probative evidence concerning Gutierrez's harassment of McArdle and Hesse's response (or lack of response) to the harassment.

## I.   **Retaliatory Conduct Toward Others**

Defendants have moved to exclude evidence of the following alleged instances of retaliation (none of which are at issue as adverse employment actions suffered by Plaintiff):  (1) Hesse's alleged retaliation against McArdle relating to the patient complaint; (2) the alleged retaliation against McArdle concerning lab coats; (3) Hesse's alleged retaliation against Plaintiff concerning a photograph of the Primary Care Unit; (4) Hesse's alleged retaliation against Gutierrez in 1997 after a disagreement about Gutierrez's schedule; (5) Gutierrez's failure to apologize to Plaintiff in approximately 1997 for an argument they had; and (6) Gutierrez's alleged retaliation against Umali relating to the suicidal patient incident in which Plaintiff was also involved.  (Def. Br. (Doc. 64) at 2-3)  Plaintiff contends that evidence concerning these incidents is relevant to show Hesse's retaliatory motive.  (Pltf. Br. (Doc. 84) at 1)

14

Evidence of other acts of retaliation by a party – or by another supervisor of a party – may be relevant to show retaliatory motive. However, relevance must be assessed on a case-by-case basis and depends "on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint/ United Management Co. v Mendelsohn, 128 S.Ct. 1140, 1147 (2008) (evidence of discrimination by individuals other than the decision-makers in a plaintiff's case may be relevant). See also Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176-77 (2d Cir. 2005) ("relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved [but falling outside the actionable time period], may be considered to assess liability on the timely alleged [retaliatory] act"); Worthington v. County of Suffolk, No. 02-Civ.-00723(DLI)(ARL), 2007 WL 2115038, at *4 (E.D.N.Y. July 20, 2007) (other retaliatory acts by decision-maker relevant); Hinton v. City College of New York, No. 05-Civ.-08951(GEL), 2008 WL 591802, at *26 (S.D.N.Y. Feb. 29, 2008) (evidence that decision-maker retaliated against another employee who filed discrimination complaint was relevant to establish retaliatory intent against plaintiff); Rifkinson v. CBS, Inc., No. 94-Civ.-07985(KTD)(JCF), 1997 WL 634514, at *2 (S.D.N.Y. Oct. 14, 1997) ("Demonstrated bias by a decisionmaker [in plaintiff's case] is probative of discriminatory animus, and is therefore admissible even if that bias was directed against employees not similarly situated to the plaintiff.").

Of the purported retaliatory acts listed by Defendants, only the McArdle patient complaint incident and the photo incident are related closely enough to Plaintiff's case to be considered relevant here. The McArdle patient complaint incident is closely related to Plaintiff's case because it involves alleged retaliation by the same individual

who allegedly retaliated against Plaintiff (Hesse) with respect to the same protected

activity (complaints about Gutierrez's harassment of McArdle) during the same time

period (i.e., between May and October 2002).  The probative value of the photo incident

is less clear, but because the incident is factually connected to the first alleged adverse

action taken by Hesse against Plaintiff – the removal of her on-call duties on April 25,

2002 (see Pltf. Rule 56.1 Statement of Contested Material Facts ¶¶ 399-415) – the Court

will not exclude evidence concerning this incident.  Therefore, Defendants' motion to

exclude evidence concerning the patient complaint incident and the photo incident is

denied.[3]

       Defendants' motion is granted with respect to the other allegedly

retaliatory incidents, however, because Plaintiff has not shown that any of those incidents

are probative of retaliatory intent in her case.  Gutierrez's alleged acts of retaliation are

not probative because there is no evidence that Gutierrez played a role in any adverse

actions allegedly taken against Plaintiff.  Hesse's alleged retaliation against Gutierrez is

irrelevant because it was not related to any protected activity and, in any event, happened

years before the events at issue here.  And the alleged lab coat incidents are not relevant

because the Court has already held that those incidents do not rise to the level of adverse

employment actions against McArdle, and there is little (if any) evidence that Hesse was

actually involved.  (McArdle Summ. Judg. Op. at 11, 20-22)

---

[3] Defendants argue that evidence concerning the patient complaint incident should be
excluded in part because Hesse's alleged conduct did not rise to the level of an adverse
employment action. (Def. Br. (Doc. 64) at 7-8)  The Court, however, has already held
precisely the opposite, i.e., that a reasonable jury could find that the patient complaint
incident constituted an adverse employment action. (McArdle Summ. Judg. Op. at 22)

## **CONCLUSION**

For the reasons stated above, the parties' in limine motions (Docket Nos. 61, 63, 65, 66, 69, and 72) are granted in part and denied in part.  The Clerk of the Court is directed to terminate these motions.

The parties are directed to submit supplemental letter briefs (as described on page 5 above) by fax no later than 5:00 p.m. on July 6, 2009.

Dated: New York, New York          SO ORDERED.
       July 1, 2009

_____
Paul G. Gardephe
United States District Judge