UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
LESLIE MUGAVERO,

        Plaintiff,

-against-

ARMS ACRES, INC. and FREDERICK
HESSE, INC.
        Defendants
_____X

ECF CASE

03 Civ. 5724 (PGG)

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
# PRE- JUDGMENT AND POST-VERDICT INTEREST AND COSTS

Respectfully Submitted,

Law Office of
**ROBERT DAVID GOODSTEIN, ESQ.**
*Attorneys for Plaintiff*
56 Harrison Street, Suite 401
New Rochelle, New York 10801
(914) 632-8382

On the Brief:
Paula Johnson Kelly, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................-i-

PRELIMINARY STATEMENT..............................................................................................1

FACTS......................................................................................................................................1

ARGUMENT............................................................................................................................2

    POINT I

        AN AWARD OF REASONABLE ATTORNEY'S
        FEES WILL FULFILL THE PURPOSE OF THE
        FEE-SHIFTING STATUES AND FAIRLY
        COMPENSATE MS. MUGAVERO..................................................................2

        A. Purpose of Fee-Shifting Statutes......................................................................2

        B. Computation of Attorney's Fee Awards...........................................................3

    POINT II

        PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE................................5

        A. The Hourly Rate Listed is the Customary Rate
           Charged to Ms. Kelly's Clients..........................................................................5

        B. Ms. Kelly's Experience and Case Skills
           Warrant the Hourly Rate Requested...................................................................6

           i. The Size of the Law Firm Is Only One
           Factor But It Should Not Be
           Dispositive.....................................................................................................9

           ii. A Delay In Payment Is Another
              Factor To Be Considered When
              Determining Rates....................................................................................9

           iii. Complexity of Litigation, Time
              Exclusively Expended and Contingency
              Fee Arrangement Are Additional
              Factors To Be Considered........................................................................10

POINT III

    PLAINTIFF IS ENTITLED TO
    PRE-JUDGMENT INTEREST..................................................................................11

POINT IV

    PLAINTIFF IS ENTITLED TO BE
    REIMBURSED HER FEES
    AND COSTS............................................................................................................13

CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

100 F.3d 243 (2d Cir. 1996) .................................................................................. 9

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, et al*, 522 F.3d 182 (2008) .................................................................. 3, 4

*Barcia v. Sitkin*, 683 F. Supp. 358 (S.D.N.Y. 1988) ............................................ 5

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989) ............................ 3, 4

*Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ........ 4, 6

*Caruso v. Peat, Marwick, Mitchell & Co.*, 779 F. Supp.332 (S.D.N.Y.1991) ........ 8

*Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053 (2d Cir. 1989), cert. denied, 496 U.S. 268 (1990) ........................................ 10

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ............................................ 11

*City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686 (1986) .................. 2, 4

*Clarke v. Frank*, 960 F.2d 1146 (2d Cir. 1992) ................................................ 11

*Cohen v. W. Haven Board of Police Comm'rs*, 638 F.2d 496 (2d Cir. 1980) ...... 3

*Cowan v. Prudential Insurance Co.*, 728 F. Supp. 87 (D. Conn. 1990) ............ 10
*Cowan v. Prudential Insurance Co.*, 935 F.2d 522 (2d Cir. 1991) ................ 3, 10

*Cruz v. Local Union No.3, of the International Board of Electric Workers*, 34 F.3d 1148 (2d Cir. 1994) .............................................................. 4

*Davis v. City of New Rochelle*, 156 F.R.D. 549 (S.D.N.Y. 1994) ...................... 7

*Donovan v. CSEA Local Union 1000, AFSCME, AFL-CIO*, 784 F.2d 98 (2d Cir.), <u>cert. denied</u>, 479 U.S. 817 (1986) .................................................. 11

*Dunlap-McCuller v. Riese Organization*, 980 F.2d 153 (2d Cir. 1992) ............ 8

*Eddleman v. Switchcraft*, 965 F.2d 422 (7th Cir. 1992) .................................... 8

*Garcia v. Yonkers Public School District*, 499 F. Supp. 2d 421 (S.D.N.Y. 2007) ........................................................................................................ 7

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ........................................ 11

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992) .............................................. 4, 10

*Helbrans v. Coombe*, 890 F. Supp. 227 (S.DN.Y. 1995) .................................. 7

*Heng Chan v. SungYue Tung Corp.*, 2007 WL 1373118 at 9 (SDNY May 8, 2007) ................................................................................................ 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................ 2, 3, 4

*Hine v. Mineta*, 253 F. Supp. 2d 464 (E.D.N.Y. 2003) ................................. 13

*Huntington Branch, NAACP v. Town of Huntington*, 961 F.2d 1048 (2d Cir. 1992) ................................................................................................ 10

*Islamic Center of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465 (5th Cir. 1989) ................................................................................................ 8

*James v. Nat'l Railroad Passenger Corp*, 2005 WL 6182322 (SDNY Mar. 28, 2005) ................................................................................................ 13

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................ 4, 10

*Kerr v. Quinn*, 692 F.2d 875 (2d Cir. 1982) ................................................. 2

*Lewis v. Coughlin*, 801 F.2d 570 (2d Cir. 1986) ........................................... 11

*Loeffler v. Frank*, 486 U.S.549, 108 S. Ct. 1965 (1988) ................................. 11

*Loper v. New York City Police Department*, 853 F. Supp. 716 (S.D.N.Y. 1994) ............ 8

*Luciano v. The Olster Corp.*, 109 F.3d 111 (2d Cir. 1997) .............................. 3

*Marfia v. T.C. Ziraat Bankasi*, 903 F. Supp. at 476 vacated and remanded on grounds, 100 F.3d 243 (2d Cir. 1996) ................................................. 9

*Miele v. New York State Teamsters Conf. Pension & Retirement Fund*, 831 F.2d 407 (2d Cir. 1987) ................................................................... 6

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ................................................ 4, 5, 10

*M.L. v. Board of Ed.*, 2003 WL 1057476 (S.D.N.Y. 2003) ................................. 7

*Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416 (7th Cir. 1991) ........... 8

*Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S. Ct. 964 (1968) .............. 2

*Newsome v. McCabe*, 2002 WL 1008472 (ND ILL 2002) ................................. 13

*Paulino v. Upper West Side Parking Garage, Inc.*, 96 Civ. 4910 (MGC) ............... 7

*Parrish v. Sollecito*, 280 F. Supp. 2d 145 (S.D.N.Y. 2003) ............................ 7, 9

*Pennsylvania v. Delaware Valley Citizens Council*, 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) ................................................... 4, 11

*Polk v. NYS Department of Corrections*, 722 F.2d 23 (2d Cir. 1983) .................. 3

*Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510 (S.D.N.Y. 1994) ............... 7

*Reid v. New York*, 584 F. Supp. 461 (S.D.N.Y. 1984) ............... 5

*Reitner v. MTA*, 457 F.3d 224 (2d Cir. 2006), cert denied, 127 S.Ct. 1331 (2007) ............... 5

*Rotella v. New York City Board of Education*, 2002 WL 59106 5 (E.D.N.Y. January 17, 2002) ............... 13

*Sands v. Runyou*, 28 F.3d 1323 (2d Cir. 1994) ............... 3

*Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir. 1993) ............... 11

*Sharkey v. Lasmo*, 214 F.3d 371 (2d Cir. 2000) ............... 11

*Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566 (7th Cir. 1992) ............... 8

*Torres v. City of New York*, 2008 WL 419306(GEL)(S.D.N.Y. Feb. 14, 2008) ............... 7

*Wilder v. Bernstein*, 725 F. Supp. 1324 (S.D.N.Y. 1989) ............... 3

## STATE CASES

*Bermeo v. Atakent*, 241 A.D.2d 235, 671 N.Y.S.2d 727 (1st Dept. 1998) ............... 12

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 672 N.Y.S.2d 230 (1997) ............... 11

## FEDERAL STATUTES

42 U.S.C. §§1981A, ............... 1, 2

42 U.S.C. 1988 ............... 2

42 U.S.C. 2000e 5(k) ............... 1, 3

28 U.S.C.§1920 ............... 13

28 U.S.C. §1961 ............... 1, 12

## STATE STATUTES

Administrative Code §8-502 ............... 1

NYC.P.L.R. §5001 ............... 1, 11, 12

NY C.P.L.R. §5002 ............... 1, 12

NY C.P.L.R. §5003 ............... 1, 12

NYCPLR §5004 ............... 12

## Preliminary Statement

Plaintiff, Leslie Mugavero, respectfully submits this Memorandum of Law, along with the accompany Affidavit of her counsel, Paula Johnson Kelly, and its attached exhibits, in support of her motion for attorneys' fees, pre-judgment interest, post-verdict interest and costs as a prevailing party, pursuant to 42 U.S.C. Sections 1981A, 2000e-5(k) and Administrative Code, Section 8-502(f).

## Facts

A jury trial in this employment discrimination action, brought under Title VII and the New York State Human Rights Law, was held on July 8-10, 13-17 and 20-24, 2009. At the close of trial, the jury returned the verdict for Ms. Mugavero and against both defendants on her claims that Defendant had retaliated against her on the basis of her protected activities. The jury awarded to Plaintiff back pay in the amount of $468,183 plus $46,000 for replacement fringe benefits, compensatory damages of $250,000, and $350,000 punitive damages. As such, Plaintiff is the prevailing party and entitled to attorneys' fees, pre-judgment interest, post verdict interest and reimbursement of costs and disbursements, pursuant to 42 U.S.C.§§1981A, 2000e-5(k), the Administrative Code §8-502(f), 28 U.S.C.§1961, and NY C.P.L.R. §§5001, 5002, 5003, 5004.

# Argument

## I. AN AWARD OF REASONABLE ATTORNEYS' FEES WILL FULFILL THE PURPOSE OF THE FEE-SHIFTING STATUTES AND FAIRLY COMPENSATE MS. MUGAVERO

### A. Purpose of Fee-Shifting Statutes.

Congress enacted 42 U.S.C. §§1981A, 1988.[1], and 2000e-5(k) because of the salutary purpose of the civil rights laws to which these statutes apply. A shifting of fee obligations to a defendant who has been found liable for committing the social evil of unlawful employment discrimination is needed, Congress found, in order to encourage lawyers to represent civil rights plaintiffs in the public interest. See S. Rep. No. 1011, 94th Cong. 2d Sess. 1, (1976):

> [C]itizens must have the opportunity to recover what it costs them to vindicate these rights . . . . If the cost of private enforcement becomes to great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee-shifting in these cases.

Recognizing that actual damages in civil rights litigation are often small and that civil rights litigants are seldom able to afford competent counsel at market rates, the United States Supreme Court has noted:

> "The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."

*City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S. Ct. 2686 (1986), quoting *Kerr v. Quinn*, 692 F. 2d 875, 877 (2d Cir. 1982); *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401, 88 S.Ct. 964

---

[1] Case law and standards developed for fee awards under 42 U.S.C. 1988 apply equally to fee determinations under Title VII. Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) ('[T]he legislative history of 1988 indicates that Congress intended that 'the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act [including Title VII]'") (citation omitted).

(1968); "[T]he purpose of the fee-shifting statute is to encourage the vindication of civil rights." *Wilder v. Bernstein*, 725 F. Supp. 1324, 1331 (S.D.N.Y. 1989).

Specifically, fee-shifting provisions were designed to address the concern that civil rights plaintiffs are often unable to retain an attorney, either because of insufficient financial resources or because their cases do not hold out the possibility of a large enough recovery to attract attorneys working on a contingency fee basis. Id. at 2; H. Rep. No. 94-1558, at 9 (1976) (42 U.S.C. 1988). See also *Hensley v. Eckerhart*, 461 U.S. 424, 433 103 S.Ct. 1933 (1983) ("The purpose of 1988 is to ensure effective access to the judicial process for persons with civil rights grievances" [citation and internal quotation marks omitted]).[2]

## B. Computation of Attorney's Fee Awards.

Title VII provides that a reasonable attorney's fee may be awarded to the prevailing party "as part of the costs." 42 U.S.C. 2000e 5(k). Fees charged for similar work by attorneys of like skill in the same area is a starting point for determining a reasonable fee award. *Cohen v. W. Haven Board of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980). The "community" for purposes of the calculation of fees is the district where the district court sits. *Polk v. NYS Dept. of Corrections*, 722 F.2d 23, 25 (2d Cir. 1983) Absent an abuse of discretion or an error of law, the Second Circuit will not disturb the District Court's calculation of reasonable attorneys fees. See *Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir. 1994); *Luciano v. The Olster Corp.*, 109 F. 3d 111, (2d Cir. 1997).

The most recent approach in this Circuit to a calculation of attorneys' fees was set forth in the amended *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany, et al*, 522

---

[2] This Circuit has quoted Blanchard v. Bergeron, 489 U.S. 87, 96, 109 S.Ct. 939, 945-46 (1989) (which in turn quoted Rivera, supra, 477 U.S. at 574, 106 S.Ct. at 2694), in requiring an increase to the lodestar amount that the district court had reduced to exclude work on unsuccessful claims: "'[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiff's whose rights were violated. Unlike most private torts litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'" Cowan v. Prudential Insurance Co., 935 F. 2d 522, 526 (2d Cir. 1991).

F.3d 182 (2008), which held that "the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the "lodestar"- what we think is more aptly termed the "presumptively reasonable fee". Id at 183. The Second Circuit suggested that the District Court consider "what a reasonable, paying client would be willing to pay", when setting the reasonable hourly rate it uses to calculate the lodestar Id at 184, and consider factors including, but not limited to:

> the complexity and difficulty of the case; . . . the resources required to prosecute the case effectively. . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation. Id.

as well as, among others, the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

The Court identifies the "lodestar" amount by multiplying the number of hours reasonably worked on the case by the reasonable hourly rate for those services. *Hensley v. Eckerhart*, 461 U.S. at 437; *Grant v. Martinez*, 973, F. 2d 96, 99 (2d Cir. 1992). The Johnson factors assist in determining what is reasonable. The lodestar amount may then be adjusted pursuant to certain permissible factors, such as exceptional results achieved, contingent risk,[3] and delay in payment.[4] *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 945(1989); *Cruz v. Local Union No.3, of the Int'l Board of Elec. Workers*, 34 F. 3d 1148, 1159 (2d Cir. 1994); *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686 (1986); *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891, 901 (1984); *Hensley v. Eckerhart, supra*. When this procedure is applied to the specific facts in the case at bar, the Court will agree that plaintiff's counsel's hourly rates are reasonable.

---

[3] See *Pennsylvania v. Delaware Valley Citizens Council*, 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987).
[4] See *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment -- whether by the application of current rather than historic rates or other-wise -- is within the contemplation of [42 U.S.C. 1988]").

## II. PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE

The Supreme Court has repeatedly held that a reasonable rate is "one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (emphasis added) (citation and internal quotation marks omitted).

### A. The Hourly Rate Listed is the Customary Rate Charged to Ms. Kelly's Clients

An attorney's customary rate is a significant factor in determining a reasonable market rate. *Reitner v. MTA*, 457 F.3d 224, 232 (2d Cir. 2006), cert denied, 127 S.Ct. 1331 (2007), and it is "'presumptively appropriate' to use as the market rate" for that attorney," *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996), quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993); *Meriwether v. Coughlin*, 727 F.Supp. 823, 831 (S.D.N.Y. 1989) ("We see no reason to depart from our previous position that the usual hourly charged to paying clients by [counsel] are reasonable rates of compensation for their work in this [civil rights] action"); *Reid v. New York*, 584 F.Supp. 461 (S.D.N.Y. 1984) (customary hourly rates of attorneys are their "market rates").

Therefore, in determining a reasonable hourly rate, the Court should initially examine the attorney's existing schedule of fees. See, e.g. *Barcia v. Sitkin*, 683 F.Supp. 358, 357 (S.D.N.Y. 1988). Annexed as Exhibit #2 to the Affirmation of plaintiff's counsel, Paula Johnson Kelly, are redacted retainer agreements and statements showing the actual rates charged for Ms. Kelly's legal services during the period of this litigation. Such exhibits confirm that the hourly rates set forth in the instant application (paragraph #15) are the customary rates which are normally charged to Ms. Kelly's clients and for her services. Moreover, here, the exhibits confirm the increase in the attorney hourly rate since the instant action commenced in 2002, through its span of seven years

through 2009, and plaintiff's counsel's per hour rate increase from $250 per hour at the inception of the case in 2002 through $350 per hour at the time verdict was rendered in July 2009.

### B. Ms. Kelly's Experience and Case Skills Warrant the Hourly Rate Requested

Plaintiff was wholly successful and prevailed on her claims of retaliation, based upon her protected activities of reporting what she had a good faith belief to be sexual harassment and for making claims of retaliation for reporting the discrimination. Therefore, plaintiff's counsel's experience and skill warrant the requested hourly rate since she was successful in obtaining a substantial plaintiff's verdict on the issues that were submitted to the jury[5], including punitive damages.

The rates accorded counsel for a prevailing plaintiff should be the prevailing market rates for attorneys of comparable experience and skill. *Blum v. Stenson*, supra 465 U.S. 886, 895-96 & n. 11. Quoting from the Senate Report on the Civil Rights Attorneys Fees Act, the Supreme Court noted that "'It is intended that the amount of fees awarded under [42 U.S.C. 2000e-5(k)] be governed by the same standards which prevail in other types of equally complex litigation, such as antitrust cases.'" *Id* at 893, quoting S. Rep. No. 1011, 94th Cong., 2d Sess., 5 U.S. Cong. & Admin. News, pp. 5908, 5913 (1976). Thus, a court must determine what lawyers of comparable skill and experience handling other complex federal litigants charge their private clients. See *Miele v. New York State Teamsters Conf. Pension & Retirement Fund*, 831 F. 2d 407, 409 (2d Cir. 1987). That inquiry examines fees charged by lawyers for both plaintiffs and defendants. See *Blum*, supra, 465 U.S. at 893-94. Both the hourly rate and the number of hours expended on this action by counsel for

---

[5] Moreover, the jury returned a verdict that included $468,183, the exact dollar amount for lost wages requested by plaintiff's counsel in her summation.

defendant, a larger firm with several attorneys working on the case, are undoubtedly far greater than those of Ms. Mugavero's counsel.

As shown in the Affirmation of Ms. Kelly, she has been litigating civil rights and employment related claims in this relevant community of the Southern District of New York since the 1990s. In 1999, based upon her own observations of Ms. Kelly's performance during *Paulino v. Upper West Side Parking Garage, Inc.*, 96 Civ. 4910 (MGC), the Honorable Miriam Cedarbaum, U.S.D.J. of this Court found Ms. Kelly to be an experienced litigator and her rate of $250 per hour for appearances to be reasonable and customary. Moreover, the evidence showed Ms. Kelly's rates to be reasonable "if not modest and within the low range of market rates for experienced employment discrimination attorneys in this geographic area.") *Id* at 1999 WL 325363, *4 (SDNY May 20, 1999). However, that was more than a decade ago. Clearly, plaintiff's counsel's experience and skill gained in the last decade warrant the modest increase in her hourly rate.

Recent decisions in the Southern District, as well as decisions going back in the 1990s, make clear that the hourly rate of $350 as currently sought here is reasonable for attorneys with like skills and experience in this community. See, e.g. *Torres v. City of New York*, 2008 WL 419306, *1(GEL)(S.DN.Y. Feb. 14, 2008) (approving $350 an hour for attorney with 10 years experience); *Garcia v. Yonkers Public School District*, 499 F. Supp.2d 421, 426 (S.D.N.Y. 2007) (awarding $350 an hour for experienced civil rights litigator); *M.L. v. Board of Ed.*, 2003 WL 1057476 at *2-3 (S.D.N.Y. 2003) ($350-$375 an hour held reasonable for seasoned litigator); *Parrish v. Sollecito*, 280 F. Supp.2d 145 (S.D.N.Y. 2003) (*$350 for experienced lawyer in a small firm*); *Helbrans v. Coombe*, 890 F. Supp. 227 (S.DN.Y. 1995) (awarding $350 an hour for experienced solo practitioner); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 518-19 (S.D.N.Y. 1994)($300 an hour for lead counsel in housing discrimination case); *Davis v. City of New Rochelle*,

156 F.R.D. 549, 558 (S.D.N.Y. 1994) ($300 for lead counsel in voting rights case); *Loper v. New York City Police Dep't*, 853 F. Supp. 716, 720 (S.D.N.Y. 1994) ($250 per hour for solo practitioner of 7 years' experience); *Caruso v. Peat, Marwick, Mitchell & Co.*, 779 F.Supp.332, 334 (S.D.N.Y.1991)($300 an hour for partners in employment discrimination case).

Faced with significant deviations between hourly rates awarded and actual market rates for comparable legal services in the community, Courts of Appeals have not hesitated to reverse for abuse of discretion. In *Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 568 (7th Cir. 1992), the court held that the district court had abused its discretion:

> It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyers' legal services better than the market did. What the market valued at $350 he thought worth only half as much. He may have been right in some ethical or philosophical sense of "value" but it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.

Id. (citation omitted). See also, e.g., *Dunlap-McCuller v. Riese Organization*, 980 F.2d 153, 60 (2d Cir. 1992) (reversing reduction in attorney's fees to 2% of amount requested based on application of an impermissible proportionality rule and failure to compensate counsel for work on the first trial that contributed to success in second); *Eddleman v. Switchcraft*, 965 F.2d 422, 425 (7th Cir. 1992) (district court abused discretion in arbitrarily lowering attorney's requested hourly rate in employment discrimination case); accord; *Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416, 1418 (7th Cir. 1991); *Islamic Center of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465 (5th Cir. 1989) (reversing reduced hourly rate awarded in civil rights case for abuse of discretion, including district court's failure to specify reasons for not applying prevailing market rates and for denying enhancement for delay in payment).

Accordingly, given these cited decisions, and considering as the Court must, the effect of inflation and the inevitable rise in billing rates, plaintiff contends the requested hourly rates for Ms. Kelly of $250 to $350 are reasonable and should not be reduced.

(i) The Size of the Law Firm Is Only One Factor But It Should Not Be Dispositive

While the size of the law firm may be one factor to be considered, it should not be dispositive in determining the reasonable hourly rate for an experienced attorney. Fourteen 14 years ago- when awarding the requested amount of $250 and $225 per hour to attorneys with eleven years or less experience in an employment discrimination case, Judge Denny Chin of the Southern District Court addressed this issue and explained:

> The prevailing rates in the community for lawyers experienced in the employment field have increased in recent years, in part in recognition of the complicated evolving nature of this area of law. Significantly, many employers in recent years have turned to the large law firms --such as the Bank's present counsel -- to represent them in employment discrimination cases. It would be incongruous to limit plaintiff's counsel in these cases to an hourly rate of $200 or less when defendant's counsel, in defending the very same cases, are commanding rates of up to $400 an hour (or more) for partner.

*Marfia v. T.C. Ziraat Bankasi*, 903 F. Supp. at 476 (S.D.N.Y. 1995) vacated and remanded on other grounds, 100 F.3d 243 (2d Cir. 1996). Therefore, logic should dictate that plaintiff's counsel should not be required in this action to accept less than her customary hourly rate, merely because she practices in a small law firm. See, also *Parrish v. Sollecito*, 280 F. Supp.2d 145 (S.D.N.Y. 2003) ($350 for experienced lawyer in a small firm).

(ii) A Delay In Payment Is Another Factor To Be Considered When Determining Rates

Here, because of the contingency nature of the Retainer Agreement, plaintiff's counsel has had to wait for a successful outcome before any payment of the attorney's fee. Courts have awarded current rather than historic rates to attorneys who have experienced a delay in payment. See, e.g.

*Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct 2463, 2469 (1989)(noting it is within the discretion of the district court to make "an appropriate adjustment for delay in payment -- whether by the application of current rather than historic hourly rates or otherwise."); Accord, *Grant v. Martinez*, 973 F. 2d 96, 100 (2d Cir. 1992); *Huntington Branch, NAACP v. Town of Huntington*, 961 F. 2d 1048, 1049 (2d Cir. 1992); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F. 2d 1053, 1057-58 (2d Cir. 1989), cert. denied, 496 U.S. 268 (1990); *Cowan v. Prudential Insurance Co.*, 728 F.Supp. 87, 92 (D. Conn. 1990), rev'd on other grounds, 935 F. 2d 522 (2d Cir. 1991).

Here, not only has counsel had to wait for any payment of the fee because of the contingency nature of the Retainer Agreement, but there has been talk of an appeal of the judgment. Therefore, it may be more years before any payment is received by plaintiff's counsel.

(iii) **Complexity of Litigation, Time Exclusively Expended and Contingency Fee Arrangement Are Additional Factors To Be Considered**

Counsel in this case had to deal with some complex issues (factor no.2 in *Johnson v. Georgia Highway Express, supra),* among which were the medical issues, including the patient charts, proper medical procedures, accepted standards of medical practice, medications and their affects, dosage and usage, confidentiality under HIPPA and 42 CFR and the issue of what constitutes patient identifying information.

Counsel is also entitled to be compensated for having to decline other, fee-paying employment during the fourteen hundred-odd hours spanning over seven years counsel worked on this case. In *Missouri v. Jenkins, supra,* the Supreme Court noted that this factor is highly significant as the basis for awarding a higher hourly rate than an attorney would otherwise deserve. 491 U.S. 274. This is even more compelling in light of the fact that if there had been no recovery for Ms. Mugavero, plaintiff's counsel would never have been paid her fee under the contingency

retainer agreement. Accordingly, the contingency risk factor has always been considered a basis for increasing an hourly rate to the higher end of the scale. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); see *Pennsylvania v. Delaware Valley Citizens Council*, 483 U.S. 711, 726-27 (1987) (concurring opinion); *Lewis v. Coughlin*, 801 F. 2d 570, 574, 576 (2d Cir. 1986).

Time spent on the fee application itself is also compensable. The Court of Appeals for this circuit has stated, "The fee application is a necessary part of the award of attorney's fees. If the original award is warranted, we think that a reasonable amount should be granted for the time spent in applying for the award." Donovan v. CSEA Local Union 1000, AFSCME, AFL-CIO, 784 F.2d 98, 106 (2d Cir.), cert. denied, 479 U.S. 817 (1986).

### III. PLAINTIFF IS ENTITLED TO PRE-JUDGMENT INTEREST

As the prevailing party, plaintiff is entitled to pre-judgment interest on her claims for the lost wages she suffered, under Title VII and the New York State Human Rights Law. "Title VII authorizes a district court to grant pre-judgment interest on a back pay award." *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 145 (2d Cir. 1993). An award of pre-judgment interest is intended to make a plaintiff whole for the wrong she has suffered. *e.g. Loeffler v. Frank*, 486 U.S.549, 558, 108 S.Ct. 1965 (1988). In this Circuit it is generally considered an abuse of discretion to fail to make such an award., *Sharkey v. Lasmo* 214 F.3d 371, 375 (2d Cir. 2000); *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998); *Clarke v. Frank*, 960 F.2d 1146, 1153-54 (2d Cir. 1992).

Under the New York law, NYCPLR §5001, an employee who prevailed on retaliation claims is entitled to pre-verdict interest on back pay, despite the size of the compensatory damages and punitive damages award. See, e.g. *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc.2d 325, 672 NYS2d 230 (1997) Furthermore, prejudgment interest may be awarded on state

-11-

claims, pursuant to NYCPLR §5001, even where liability is also found under federal law. See, e.g. *Heng Chan v. SungYue Tung Corp.*, 2007 WL 1373118 at *9 (SDNY May 8, 2007) The straight interest shall be computed "upon all the damages" and may be computed "from a single reasonable intermediate date" NYCPLR §5001(b).

Moreover, plaintiff is further entitled to the New York State 9% post-verdict interest on the total sum awarded, including interest, from the date the verdict was rendered until the date the final judgment is entered. NYCPLR §§ 5002, 5004, see e.g. *Bermeo v. Atakent*, 241 A.D.2d 235, 671 NYS2d 727 (1st Dept. 1998) as well as, additional interest on the total sum, including attorneys fees and costs, until the judgment is paid .NYCPLR §5003.

Furthermore, under federal law the post-judgment interest rate shall be compounded annually on any money judgment in a civil action, including attorneys fees and costs, from the date of entry of the judgment to the date of payment. 28 U.S.C. §1961.

Since plaintiff was successful on both her federal and state law retaliation claims, plaintiff contends her award for lost wages of $468,183, as well as her compensatory damages[6] award of $250,000, should be assigned under plaintiff's New York State Human Rights Law claims, and the interest on these awards calculated under the applicable New York laws.

---

[6] Since New York State law does not permit an award of punitive damages, plaintiff submits that her punitive damage award be assigned under Title VII, while her compensatory damages award be assigned under New York State Law as the amount awarded is greater than the cap allowed in Title VII for punitive and compensatory damages.

## IV. **PLAINTIFF IS ENTITLED TO BE REIMBURSED HER FEES AND COSTS**

As the prevailing party, an award of attorneys' fees should also "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Here, Plaintiff requests recovery of reasonable out-of-pocket expenses of 12,998.35 incurred by her attorneys that are ordinarily charged to the firms clients, including filing fees, process servers fees, subpoena fees, witness fees, deposition transcripts, court transcripts, exhibit preparation, mailings and photocopies, and travel, all of which are recoverable. See, e.g. James v. Nat'l Railroad Passenger Corp, 2005 WL 6182322 *22 (S.D.N.Y. March 28, 2005); Hine v. Mineta, 253 F.Supp.2d 464, 467 (E.D.N.Y. 2003) (awarding costs for deposition transcripts and transcripts of the court proceedings); Rotella v. New York City Board of Education, 2002 WL 59106 *5 (E.D.N.Y. January 17, 2002) (finding that photocopying, travel, telephone costs, and filing fees are generally recoverable); Newsome v. McCabe, 2002 WL 1008472 at *11 (ND ILL 2002) (process server fees were recoverable). The requested fees are specifically permitted by statute, 28 U.S.C.§1920, and should be allowed.

## Conclusion

An award of plaintiff's counsel's full hourly rates is required to fulfill the purpose of Title VII's fee-shifting provisions and to compensate Ms. Mugavero and her counsel for the risk of non-payment, the delay in payment (which still continues), and the value to the public good of deterring future retaliation against protected activity. Both the rates and the hours requested are more than reasonable and should be granted in their entirety, along with reimbursement of costs and

disbursements, and applicable interest on the money judgment recovered in this successfully prosecuted action.

Dated: New Rochelle, New York
August 11, 2009

Respectfully yours,
Law Office of
ROBERT DAVID GOODSTEIN, ESQ.

By: *(signature)*

PAULA JOHNSON KELLY, ESQ. (PJK 8889)
*Attorneys for Plaintiff*
56 Harrison Street, Suite 401
New Rochelle, New York 10801
(914) 632-8382