UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESLIE MUGAVERO,

                    Plaintiff,

       - against -

ARMS ACRES, INC. and FREDERICK
HESSE, M.D.,

                 Defendants.

**MEMORANDUM OPINION
AND ORDER**

03 Civ. 05724 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiff Leslie Mugavero sought relief under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq. ("Title VII") and the New York

law for alleged retaliation by her former employer, Arms Acres, Inc. ("Arms Acres") and

her former supervisor, Dr. Frederick Hesse.  (Cmplt. Counts I, II, III, IV)  Mugavero

alleged that after she supported a co-worker's sexual harassment complaint, Defendants

retaliated against her by, inter alia, issuing her written disciplinary warnings, reporting

her to New York State's Office of Professional Discipline for alleged professional

misconduct, and ultimately terminating her employment.  (Id.)  Following an eight-day

trial, a jury rendered a verdict in Mugavero's favor against both defendants, and awarded

Mugavero a total of $764,183 in compensatory damages and $350,000 in punitive

damages.  In a January 14, 2010 memorandum opinion and order, this Court denied

Defendants' motions for judgment as a matter or law and for a new trial.  Now pending

before the Court is Plaintiff's motion for an attorneys' fee award against Defendant Arms

Acres, Inc., for pre-judgment and post-verdict interest, and for costs.  Plaintiff's motion is

GRANTED to the extent stated below.

## DISCUSSION

### I. BACKGROUND

Defendant Arms Acres is a drug and alcohol rehabilitation facility.  (Tr. 97:20-23)  During the period relevant to this action, Mugavero was employed at Arms Acres as a nurse practitioner and was supervised by Defendant Hesse, who was Arms Acres' medical director.  (Tr. 68:21-25, 69:14-16, 299:20-300:10, 302:6-9)  Mugavero asserted that Hesse began retaliating against her in a variety of ways after she informed him in late April 2002 that Marie McArdle, an Arms Acres nurse, was going to make a sexual harassment complaint against the facility's Director of Psychiatry, Dr. Omar Gutierrez – a complaint that Mugavero formally supported with a written statement on May 1, 2002.  (Tr. 108:21-109:21, 687:17-688:2, 950:7-10, 952:2-25)

The Court granted Defendants summary judgment on certain of Mugavero's claims in March 2009.  Mugavero v. Arms Acres, Inc. et al., No. 03-Civ.-5724(PGG), 2009 WL 890063 (S.D.N.Y. Mar. 31, 2009).  Plaintiff then proceeded to trial on her claims that the following actions constituted unlawful retaliation under federal and New York state law:  (1) the removal of her on-call duties on the evening of April 24, 2002; (2) a May 2002 written warning; (3) an August 2002 written warning; (4) Hesse's request that the OPD investigate her for professional misconduct; (5) Arms Acres placing her on administrative leave on October 1, 2002; and (6) Arms Acres terminating her employment effective October 25, 2002.[1]  (See Tr. 154:25-155:18, 191:21-192:2, 585:21-

---

[1]  Mugavero also proceeded to trial on her claim that Hesse's report to the Office of Professional Discipline constituted prima facie tort under New York law.  The Court granted Defendants judgment as a matter of law on this claim at the close of Defendants' case after Mugavero conceded that she had not proven special damages.  (Tr. 1825:11-1827:6, 1828:4-9)

24, 1966:6-15; JX 60 (first written warning); JX 62 (second written warning); JX 109

(written complaint to OPD))

        The jury found that Mugavero proved all elements of her retaliation claim

against both defendants with respect to each of the alleged adverse actions.  (Tr. 2016:16-

2017:14, 2018:12-2019:3, 2019:20-2020:16)  It also found that Arms Acres, but not

Hesse, had proven an affirmative defense with respect to the removal of Mugavero's on-

call duties and the two written warnings – i.e., Arms Acres had proven that it would have

taken the adverse actions regardless of any retaliatory motive.  (Tr. 2017:15-2018:11,

2019:4-2019:19)  The jury found that Hesse was directly liable under state law for the

first four adverse actions and liable as an aider and abettor under state law for Mugavero

being placed on administrative leave and for the termination of her employment.  (Tr.

2018:12-2019:3, 2019:20-2020:16)

        The jury awarded Mugavero the following compensatory damages for

emotional distress relating to three adverse actions:  $75,000 for Hesse's request that the

OPD investigate Mugavero; $75,000 for Mugavero being placed on administrative leave;

and $100,000 for the termination of her employment.  (Tr. 2021:4-2021:23)  The jury

also awarded Mugavero $468,183 in lost wages and $46,000 in lost fringe benefits.  (Tr.

2021:24-2022:2)  Finally, the jury awarded $350,000 in punitive damages with respect to

the OPD investigation claim.  (Tr. 2022:7-2022:25)

        In its January 14, 2010 memorandum opinion and order, this Court

vacated (1) the award of $75,000 for emotional distress associated with Mugavero being

placed on administrative leave; (2) a portion of the lost wages award for periods of time

Mugavero was unable or unwilling to work; and (3) a substantial portion of the fringe

benefits award on the ground that Mugavero had not offered sufficient documentation

concerning her entitlement to such benefits.  The Court also reduced the punitive

damages award to $200,000 as required by Title VII's statutory cap, and granted

Defendants' motion for discovery sanctions related to Plaintiff's improper withholding of

certain documents during discovery.  Defendants' post-trial motions for judgment as a

matter of law and for a new trial were otherwise denied.

    Plaintiff has been represented throughout this litigation by Paula Johnson

Kelly of the Law Office of Robert David Goodstein.  (Kelly Aff. ¶ 1,11)  The fee

application seeks $593,074.85 in fees for Ms. Kelly's work over the past seven years;

$1,833.33 for the work of attorney Robert David Goodstein; $1,333.33 for the work of

attorney Eileen West; $14,325 for the work of paralegal Michele R. Kelly; and $4,050 for

law student/paralegal Arthur O. Luissaint.  (Kelly Reply Aff. at 6)  Plaintiff also requests

pre-judgment interest on her lost wages award in the amount of $110,760.93 and post-

judgment interest, including interest on the attorneys' fee and costs award, until the

judgment is paid at a weekly compounded rate of 0.47%.  (Id. at 7)  Finally, Plaintiff

requests $13,329.97 for disbursements and costs associated with this litigation. (Id. at 8)

## II. <u>ATTORNEYS' FEES</u>

    Plaintiff supplies substantial documentation to support her request for

attorneys' fees and costs, including itemized records of the hours spent on this case by the

attorneys and paralegals (Kelly Aff. at Ex. 3, 4, 5, 6, 12), biographical information for the

attorneys requesting fees (Kelly Aff. at Ex. 8), a detailed summary of Ms. Kelly's

qualifications and expertise (Kelly Aff.), evidence of the attorneys' standard hourly rate

billed to paying clients (Kelly Aff. at Ex. 2), and affirmations from experienced civil

rights attorneys in Ms. Kelly's geographic area supporting the reasonableness of the fees charged in this case (Kelly Aff. at Ex. 9).

   Plaintiff requests attorneys' fees at rates of $350 per hour for Ms. Kelly, $400 per hour for attorneys Eileen West and Robert D. Goodstein, $100 and $75 for the work of paralegal Michele R. Kelly and law student Arthur O. Luissaint, respectively, and $175 per hour for Ms. Kelly's travel time associated with the instant litigation for a total fee request of $614,616.51.

   **A.**  <u>**Legal Standard for Award of Attorneys' Fees**</u>

   "[T]he district court has wide discretion in determining the amount of attorney's fees to award" a "prevailing party" in a civil rights action.  <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992); 42 U.S.C. § 1988(b) (governing attorneys' fees in proceedings in vindication of civil rights).[2]  A "prevailing party" is any party to an action who "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." <u>Bridges v. Eastman Kodak Co.</u>, 102 F.3d 56, 58 (2d Cir. 1996) (internal quotation omitted).  <u>See also</u> <u>Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 790-91 (1989) (holding that a "prevailing party" need not have succeeded on the primary issue in the case).  "The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question

---

[2]  The standards for § 1988 and Title VII fee determinations are identical and the case law treats them as a merged standard.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 n. 7 (1983) ("The legislative history of §1988 indicates that Congress intended that 'the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act.'"); <u>N.A.A.C.P. v. Town of East Haven</u>, 259 F.3d 113, 117, n. 5 (2d Cir. 2001) (relying on precedents involving attorneys' fees without regard to whether they involved Title VII or some other federal statute); <u>Robinson v. City of New York</u>, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, *6 n. 4 (S.D.N.Y. Sept. 29, 2009).

that is separate from the question of the degree to which the plaintiff prevailed."
LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998).  Here, there is no
dispute that Plaintiff is a prevailing party because she obtained a verdict in her favor on
the Title VII retaliation claim she brought to trial, and the jury awarded her over $1
million in damages.  The threshold requirement is therefore met, and the key remaining
issue is what fee is "reasonable."

        The starting point for an award of attorneys fees is the "presumptively
reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, 522 F.3d 182, 183 (2d Cir. 2008).  This "initial estimate" is calculated by
multiplying "the number of hours reasonably expended on the litigation . . . by a
reasonable hourly rate."  Hensley, 461 U.S. at 433.  In exercising its discretion, the Court
must "bear in mind all of the case-specific variables that we and other courts have
identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would
be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the
minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Courts
also consider "the complexity and difficulty of the case; . . . the resources required to
prosecute the case effectively. . . , the timing demands of the case, . . . and other returns
(such as reputation, etc.) that an attorney might expect from the representation."  Id. at
184 (citing the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d
714 (5th Cir. 1974))

        "Following the determination of the presumptively reasonable fee, the
court must then consider whether an upward or downward adjustment of the fee is
warranted based on factors such as the extent of plaintiff's success in the litigation."

Robinson, 2009 WL 3109846, at *7.  Work on ultimately unsuccessful claims is compensable as long as those claims are not "wholly unrelated" to the claims plaintiff succeeded on at trial.  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (quoting Grant, 973 F.2d at 101).  A downward adjustment may still be appropriate, however, when a plaintiff "succeeded on only some of his claims for relief."  Hensley, 461 U.S. at 434.  Where the lines become blurry a court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 164 n. 8 (2d Cir. 1980), nor should "[a] request for attorney's fees . . . result in a second major litigation."  Hensley, 461 U.S. at 437.  The burden is ultimately on the applicant to demonstrate the reasonableness of the hours spent and rates asserted.  See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee."  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134.  See also Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d. Cir. 1997) ("if private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court" (internal citation omitted)).

### B.    Defendant's Objections to Plaintiff's Calculation

Defendants object to Plaintiff's request for attorneys' fees on several grounds, including:  (1) that the requested hourly rates are unreasonable; (2) that Plaintiff's fee request overcompensates her attorney for time spent on this litigation; (3)

that time spent on certain unsuccessful claims should be excluded; and (4) that Plaintiff's

limited success warrants a reduction in fees awarded.  (Def. Br. 2-3)

### 1.    <u>Reasonableness of Hourly Rates Requested</u>

The Defendants argue that any fees awarded to Ms. Kelly, and to other

attorneys at her firm, should be calculated based on Ms. Kelly's historic hourly rate of

$250, rather than her current rate of $350.  Defendants claim that a rate of $350 is not

supported by evidence demonstrating the actual fees Ms. Kelly charges to individual

clients in civil rights litigation, and that a rate of $250 is consistent with the rates charged

by similarly situated attorneys who are engaged in similar litigation.  (Def. Br. 7)  This

Court finds that Plaintiff's counsel has not only submitted sufficient evidence to support

her claim that $350 is the typical hourly rate she charges corporate <u>and</u> individual clients,

but also that the case law supports the reasonableness of this rate.

Determination of a reasonable hourly rate presents a fact issue committed

to the court's discretion and is typically defined as the market rate a paying client would

be willing to pay.  <u>Arbor Hill</u>, 522 F.3d at 183.  In determining what rate is reasonable,

courts should rely on both evidence submitted by the parties as to the rates they typically

charge, <u>Farbotko v. Clinton County of New York</u>, 433 F.3d 204, 209 (2d Cir. 2005), and

"its own knowledge of comparable rates charged by lawyers in the district."  <u>Morris v.</u>

<u>Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)</u> (citing <u>Ramirez v. N.Y. City Off-</u>

<u>Track Betting Corp</u>., No. 93 Civ. 682, 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)).

The size of the firm may also be considered as a factor if it would affect the hourly rate,

"primarily due to varying overhead costs."  <u>Cioffi v. N.Y. Cmty. Bank</u>, 465 F. Supp. 2d

202, 219 (E.D.N.Y. 2006).  In many cases "current rates, rather than historical rates,

should be applied in order to compensate for the delay in payment[.]"  LeBlanc-Sternberg, 143 F.3d at 764, citing Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989).

   "A reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation is the attorney's customary rate."  Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-170 (S.D.N.Y. 2003); see also Meriwether v. Coughlin, 727 F. Supp. 823, 831 (S.D.N.Y. 1989); Reid v. State of New York, 584 F. Supp. 461 (S.D.N.Y. 1984).  Exhibits attached to Plaintiff's fee application demonstrate that Ms. Kelly currently charges a rate of $350 to individual clients, an increase from the historic rates of $250 she charged between 2002 and 2005 and the $300 she charged between 2006 and 2007.  (See Kelly Aff. ¶ 10 & Ex. 2)  The absence of a fee agreement drafted specifically for the plaintiff in this case does not undermine the persuasiveness of this evidence.  Defendants cite no case law suggesting that a fee agreement signed by the plaintiff in the underlying litigation is necessary to determine reasonable attorneys' fees. There is sufficient evidence that Ms. Kelly actually charges and receives payment from her paying clients at a rate of $350 an hour.[3]

   Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates.[4]  Defendants argue that the current rate charged by Ms. Kelly does not

---

[3]  Ms. Kelly further supports the reasonableness of her fee by submitting affirmations from two experienced employment attorneys who confirm that the rates sought by Plaintiff are within the range typically charged by attorneys with experience comparable to Ms. Kelly's and who practice near her in Westchester County.  (Kelly Reply Aff. at Ex. 9)

[4]  Courts are instructed to look to market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal citation omitted);

reflect the prevailing market rate for similar cases.  However, consistent "precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."  Vilkhu v. City of New York, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (citing cases).  See also Robinson, 2009 WL 3109846, at *13 (granting a request for attorneys' fees in employment retaliation case at a rate of $500 and $450 per hour for the two lead lawyers and rates between $ 425 to $ 185 for other lawyers involved in the case).  Defendants have not offered evidence that Plaintiff counsel's rates are unreasonable or greater than the market rate, and given that comparable cases suggest the opposite, the Court will not reduce the hourly rate requested.[5]  Bernier v. Papagianopolous, No. 99 Civ. 2000 (MHD), 2006 WL 2819590, at *1-2 (S.D.N.Y. Oct. 2, 2006) (awarding $400 per hour in attorneys' fees to lead lawyer in §1983 action); Rainola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003) (finding rate of $400 per hour reasonable for solo and small firm practitioners).

        The parties disagree about whether Ms. Kelly's historic or current rates should be applied in calculating the attorneys' fee award.  Courts in the Second Circuit now generally apply current rates in awarding attorneys' fees in cases such as this,

---

accord Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 211 (S.D.N.Y. 2001), aff'd, 48 Fed. Appx. 363 (2d Cir. 2002). The relevant community in this case is the Southern District of New York. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).

[5]  It should also be noted that five years ago, in Guardians Ass'n of the Police Dep't of New York, Inc., No. 99 Civ. 4960 (LAK), 2004 WL 1238376 (S.D.N.Y. June 2, 2004), the court awarded Ms. Kelly her then current rate of $300 per hour – $50 per hour more than the Defendants now claim Ms. Kelly is entitled to.

recognizing that "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the [presumptively reasonable fee] should be 'current rather than historic hourly rates,'" Gierlinger, 160 F.3d at 882, citing Jenkins, 491 U.S. at 283-84 ("compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings"); LeBlanc-Sternberg, 143 F.3d at 764 (instructing district court on remand to apply "current rates, rather than historical rates" in order to "compensate for the delay in payment" in multi-year litigation).  While use of current rather than historic rates is subject to the Court's discretion – and historic rates may be applied where compensation for delay is unnecessary or Plaintiff bears some fault for the delay, see Gierlinger, 160 F.3d at 882 – it is now understood that awarding fees based on current rates is an appropriate means of compensating attorneys in protracted litigation such as this.  Grant, 973 F.2d 96; see also Robinson, 2009 WL 3109846, at *11 (applying current rates for attorneys' fees award).

      Ms. Kelly's hourly rate has increased $100, or 40%, over the seven-year life of this case.  This is a substantial increase.  In light of the heavy time demands of this case, however, the fact that Ms. Kelly was effectively the only attorney on the case over its seven year history, and the fact that her law firm was not paid for her time in this case throughout these years, the Court will use the current rates specified by Plaintiff in calculating the fee award.  (See Pltf. Br. at 10-11)

### 2.      The Number of Compensable Hours

      After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable

fee.  See Arbor Hill, 522 F.3d at 189-90. The Court will exclude any hours included in the fee application that were not "reasonably expended."  Hensley, 461 U.S. at 434.  As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Where a plaintiff submits deficient or incomplete billing records demonstrating the number of hours expended, courts may reduce the fee award requested. See Hensley, 461 U.S. at 437 n. 12 (attorneys seeking fee awards must, at least, "identify the general subject matter of his [or her] time expenditures").  Courts may likewise exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or may make an across-the-board reduction in the number of hours.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  Courts base the hours inquiry not on what appears necessary in hindsight, but on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant, 973 F.2d at 99.

Here, Ms. Kelly supplied time records for seven years of litigation.  These records include compilations of Ms. Kelly's daily contemporaneous, handwritten notes reflecting time expended on this matter (Kelly Aff. at Ex. 3); contemporaneous time records kept by paralegals Michele Kelly and Arthur O. Luissaint (Kelly Reply Aff. at Ex. 5, 13); contemporaneous, handwritten time records of lawyers Eileen West and Robert Goodstein (Kelly Aff. at Ex. 4); and redacted copies of the contemporaneous

handwritten records of time spent on the current application for attorneys' fees (Kelly

Aff. at Ex. 6).  Ms. Kelly explains that it "has long been her practice to maintain my

contemporaneous time sheets on a running daily basis, which contain all the matters on

which I worked on a given day.  These sheets are then filed by month and year.  When

required in a specific case . . . a compilation can then be made of the appropriate entries

in order to maintain the privacy and confidentiality of other clients."  (Kelly Aff. ¶ 16)

Plaintiff's motion for attorneys' fees is supported by these compilations, rather than the

actual contemporaneous daily notes made for each day on which Ms. Kelly worked on

this case.

   Defendants argue that the number of hours for which Ms. Kelly seeks

compensation is unreasonable because her billing records are vague, indicate that

administrative tasks were improperly billed at attorney rates, and reflect "block-billing."

They request an across-the-board reduction of 14% because of vague entries, and a

further 25% reduction to account for non-compensable portions of Ms. Kelly's block-

billed entries devoted to clerical tasks.  (Def. Br. 15, 17)  Based on the evidence provided

and this Court's familiarity with this case, these reductions will not be imposed.

   Courts may reduce the number of hours in a fee application where the

billing information submitted by the claimants is "too vague to sufficiently document the

hours claimed."  Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998).  Entries or

records lacking sufficient detail "cannot be evaluated for reasonableness," and so do not

meet the standard for an award of fees.  Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00

Civ. 2474 (AGS), 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001).  See Kirsch, 148

F.3d at 172 (upholding reduction of award by 20 % for vague entries such as "letter to

court," "staff conference," or "work on motion"); see also Trs. of the Bricklayers v.

Helmer-Cronin Constr., Inc., No. 03 Civ. 748 (MDF), 2005 WL 3789085, at *5

(S.D.N.Y. Oct. 24, 2005) (20 % reduction in the total number of hours billed where the

majority of entries contained vague statements such as, "Study and Review file,"

"Telephone call with client," "Letter to Silkey," and "Research").

        Defendants argue that a significant portion of Ms. Kelly's time is

described in a vague and imprecise fashion that lacks the level of specificity required to

support a fee award.  For example, they argue that such entries as "[r]eview transcripts,"

"[d]eposition prep," "[e]dit memo of law," "[d]raft Memo of Law," "research" and

"[e]dit & finalize letter to M J. Yanthis," (Kelly Aff. Ex. 3, 4) provide insufficient detail."

(Def. Br. at 15)  The legal standard is, however, more forgiving than Defendants contend.

        In Raniola, No. 96 Civ. 4482 (MDD), 2003 WL 1907865, at *4, a civil

rights case, the court found that "Defendants' complaint about lack of specificity in the

work summaries does not, in itself, justify their demand for a substantial reduction in

compensable time."  Although the court found some of the time entries to be "fairly

general, terms such as 'case preparation' or 'meeting' . . . are sufficiently concrete, when

viewed in context, to permit the court to make a judgment about the reasonableness of the

total hours claimed."  Id.; see also Tran v. Tran, 166 F.Supp.2d 793, 800 (S.D.N.Y.

2001); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 970 F. Supp. 333, 342

(S.D.N.Y.1997) ("[W]here an attorney's time entries are vague, courts may attempt to

decipher them by reference to the context in which these entries occur to determine what

work was involved" (internal citation and quotation marks omitted)).  "The court is not

required to assess each entry in isolation; rather, it may use its knowledge of the case and

the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency."  Raniola, 2003 WL 1907865, at *4 (citing Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 894 (S.D.N.Y. 1994)).  Precisely because the reasonable number of hours spent on each case is fact and context specific, the inquiry is "committed to the discretion of the court."  Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

Considering the seven years Ms. Kelly and her colleagues have represented Plaintiff in this highly contentious litigation, and the hard-fought summary judgment motion and trial, the Court finds that the 1,660 hours and 55 minutes Ms. Kelly expended on this case, and the 7 hours and 55 minutes expended by her attorney colleagues, the 57.75 hours billed by paralegal Michele Kelly at a rate of $100 per hour, and the 54 hours billed by Arthur Luissaint at a rate of $75 per hour, was reasonable. Plaintiff also seeks compensation for Ms. Kelly's travel time of 67 hours and 10 minutes, charged at half her hourly rate.  There is authority in this District to support an award of attorneys' fees for travel time.  See Jennette v. City of New York, 800 F. Supp. 1165, 1170 (S.D.N.Y. 1992) (finding compensation for travel time at half the hourly rate reasonable).  In this Court's experience, however, clients are no longer willing to pay for travel time.  Accordingly, the attorney's fee award here will not include fees sought for travel time.

Plaintiff's fee application also includes 10 hours and 40 minutes for time Ms. Kelly spent compiling and typing her recapped time records, which Defendants argue is a "clerical, administrative or secretarial" task not compensable in a fee application.

(Def. Br. at 16 (citing Williams v. New York City Hous. Auth., 975 F. Supp. 317, 324 (S.D.N.Y. 1997)).  While it is appropriate for an attorney to review her billing records when preparing a fee application, the time spent typing these records is not recoverable. Accordingly, 50% of this time – 5 hours and 20 minutes – will be excluded.

Defendants next claim that Ms. Kelly "attempts to conceal her performance of clerical functions . . . by engaging in the practice of 'block-billing' . . . or the aggregation of multiple tasks into a single billing entry."  (Def. Br. at 16)  They argue that 55 hours and 45 minutes of time is block-billed, that the Court must presume "that the majority of this time was spent performing non-compensable, clerical tasks," and that the time billed in these aggregate entries should be reduced by 25%.  (Id. at 17)  While "block-billing" is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the Court can determine the reasonableness of the work performed.  Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).  Thus "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"  United States Football League v. National Football League, 704 F. Supp. 474, 477 (1989) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2d Cir. 1974)).  Courts must look "at the big picture."  See Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990).  The Court has reviewed the fee application and supporting documentation along with Defendants' objections and does not agree that the application

overstates the number of reasonable hours expended on this case or reflects improper billing practices.[6]

### 3.      No Fee Reduction is Appropriate for Lack of Success

     Defendants argue that Plaintiff's fee request over-compensates Ms. Kelly for her time given the degree of success she obtained for her client.  As the Supreme Court has directed, "two questions must be addressed" in determining whether the results should limit the award:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Hensley, 461 U.S. at 434.  Because the answers to these questions are "no" and "yes," respectively, Defendants' request for a further reduction of the fee award will be denied.

     Defendants claim that Plaintiff was unsuccessful on the majority of her initial claims and that the hours spent on those unsuccessful claims should be excluded from any fee award.  (Def. Br. at 19, 21)  "The issue[, however,] is whether the claims on which plaintiff[] failed are sufficiently related to the prosecution of claims on which [she] succeeded, such that the time spent on the failed claims should be compensated."  Robinson, 2009 WL 3109846, at *28.  As a general matter, in employment discrimination cases:

> [S]uch unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a

---

[6] Defendants also claim that Plaintiff is precluded from recovering the compensation she paid to her treating physician for his testimony as a fact witness.  (Def. Br. 16-17) Plaintiff withdrew this request in her reply papers.  (Kelly Reply Aff. ¶ 22)  Accordingly, the Court need not address this issue.

> single claim.  In other cases the plaintiff's claims for relief
> will involve a common core of facts or will be based on
> related legal theories.  Much of counsel's time will be
> devoted generally to the litigation as a whole, making it
> difficult to divide the hours expended on a claim-by-claim
> basis.  Such a lawsuit cannot be viewed as a series of
> discrete claims.  Instead the district court should focus on
> the significance of the overall relief obtained by the
> plaintiff in relation to the hours reasonably expended on the
> litigation.

Hensley, 461 U.S. at 435.  In calculating the number of hours eligible for an attorneys'

fee award, courts should subtract any "hours dedicated to severable unsuccessful claims."

Quaratino, 166 F.3d at 425 (emphasis added).  Courts need not reduce the number of

hours expended, however, where the "successful and the unsuccessful claims were

interrelated and required essentially the same proof."  Murphy v. Lynn, 118 F.3d 938,

952 (2d Cir. 1997) (collecting cases); see also LeBlanc-Sternberg, 143 F.3d at 762

("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important

question in determining a reasonable fee is whether the failed claim was intertwined with

the claims on which he succeeded.").

       Defendants argue that their "ardent defense" resulted in the failure of 12 of

Plaintiff's 15 claims, or 80% of all claims in this litigation.  (Def. Br. at 22)  This is not

the case.  As the Court's March 31, 2009 summary judgment order states, Plaintiff's

complaint asserted six causes of action, all related to Mugavero's "claims that Defendants

retaliated against her after she complained in late April 2002 that another employee,

Omar Gutierrez, was sexually harassing a co-worker."  The complaint alleged that

Mugavero's supervisor, "Defendant Hesse . . . retaliated against her by, inter alia,

subjecting her work to undue scrutiny and causing a series of allegedly unfair disciplinary

actions to be taken against her, culminating in the termination of her employment."[7]
(March 31, 2009 Order at 1)  Accordingly, all claims in this litigation related to one set of
facts and none of the claims are severable for purposes of determining the reasonable
number of hours expended by Ms. Kelly.[8]

        "The Supreme Court has consistently stressed the importance of the
degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to
be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005).  In
Hensley, the Supreme Court explained that the presumptively reasonable fee must be
assessed in conjunction with whether "the plaintiff achieve[d] a level of success that
makes the hours reasonably expended a satisfactory basis for making a fee award[.]"
Hensley, 461 U.S. at 434. "Both the quantity and quality of relief obtained, as compared
to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in
determining the degree of success achieved." Barfield v. N.Y. City Health and Hosps.
Corp., 537 F.3d 132, 152 (2d Cir. 2008) (internal quotation omitted).  "If a plaintiff has

---

[7]  The complaint included six counts that can be grouped into four related claims:  "(1) a claim that Arms Acres retaliated against her in violation of Title VII and the New York State Human Rights Law for assisting McArdle in bringing a sexual harassment complaint against Gutierrez (Counts I, II, IV); (2) a claim against Hesse for aiding and abetting in the retaliation against her (Counts III and IV); (3) a claim against Hesse and Arms Acres for intentional infliction of emotional distress (Count V); and (4) a prima facie tort claim against Hesse and Arms Acres based on Hesse's filing of a complaint against Plaintiff with the New York State Office of Professional Discipline (Count VI)." (March 31, 2009 Order at 1)

[8]  While Defendants argue that Plaintiff's unsuccessful claims or contentions were "based on different legal standards and provide different remedies than her successful retaliation claims" (Def. Br. at 21), "plaintiff's claims for relief [] involve[d] a common core of facts" and were "based on related legal theories." Hensley, 461 U.S. at 435.  The standard for reducing a fee award because of unsuccessful claims turns on whether the facts supporting each claim are common such that the work done on each claim is incapable of clear delineation.  Such was the case here.

achieved only partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even

where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith."

Id., citing Hensley, 461 U.S. at 436.  See Robinson, 2009 WL 3109846, at *30-31

(summarizing this doctrine).

        In Hensley, the Supreme Court held that when the results obtained are

"excellent," the party seeking attorneys' fees should obtain a fully compensatory fee,

despite the fact that the case may have been less than completely successful.  Hensley,

461 U.S. at 431.  Here, only Plaintiff's claims for intentional infliction of emotional

distress and prima facie tort were dismissed in their entirety.  All six adverse actions that

the Court permitted to be presented to the jury were determined to be retaliatory.  (Tr.

2016:16-2017:14, 2018:12-2019:3, 2019:20-2020:16)  The jury awarded Plaintiff

$514,183 in back pay and fringe benefits – the full amount she requested – compensatory

damages of $250,000, and punitive damages of $350,000.  In its January 14, 2010

opinion, this Court largely sustained the jury's award, upholding compensatory and

punitive damages totaling $808,315.17.  The total sustained award of $808,315.17,

coupled with the jury's favorable findings on Plaintiff's claims presented at trial, indicate

that the results obtained were indeed "excellent."

        Defendants also argue that Plaintiff may not recover attorneys' fees and

costs associated with the "three retaliation claims that were dismissed pursuant to Arms

Acres' mixed-motive affirmative defense."  (Def. Br. at 3)  This contention merits scant

discussion.  While the jury found that Arms Acres had established an affirmative defense

as to three of the six adverse actions constituting Plaintiff's retaliation claim,[9] Plaintiff prevailed on the three remaining retaliation claims against Arms Acres and on all six retaliation claims against Hesse.  Because Mugavero succeeded on a number of her retaliation claims, and because none of the unsuccessful claims are severable, Arms Acres is not entitled to a fee reduction.

Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000), cited by Defendants, is not to the contrary.  In that case, the Second Circuit held "that a mixed motive finding acts as a complete bar to a retaliation claim, precluding any and all relief [including attorneys' fees and costs]."  In Matima, however, the defendant established its affirmative defense as to all aspects of Plaintiff's retaliation claim.  Id.  Here, Mugavero was successful on a number of her retaliation claims.  Because there were no unsuccessful, wholly unrelated claims in this case, the presumptively reasonable fee will not be reduced.

### 4.    Plaintiff's Discovery Abuses Warrant Reduction of the Fee Award and the Damages Award

In its January 14, 2010 memorandum opinion and order, this Court granted Defendants' motion for sanctions against Plaintiff and Ms. Kelly for deliberately withholding notes of certain Arms Acres patient medical charts during discovery.  The Court held that Defendants would be permitted to recover from Plaintiff and Ms. Kelly their reasonable attorneys' fees and costs associated with:  (1) their motion for discovery sanctions; (2) Defendants' letters to the Court dated June 1, 2009, June 15, 2009, June 18,

---

[9]  The jury found Arms Acres proved its affirmative defense with regard to:  (1) The removal of Plaintiff's on-call duties in April 2002; (2) the May 2002 written warning received by Plaintiff; and (3) the August 2002 written warning.  (Tr. 2017:15-2018:11, 2019:4-2019:19)

2009, and June 19, 2009, all of which concerned Plaintiff's discovery abuses; and (3) one lawyer taking Plaintiff's deposition on July 6, 2009.  Based on the time records submitted by defense counsel on January 27, 2010, as well as the parties' briefing and affirmations, Defendants are awarded $37,408 in attorneys' fees and costs for the motion, correspondence, and deposition listed above.[10]  Consistent with the Court's January 14, 2010 opinion, half of this amount will be deducted from Plaintiff's total damage award, and half will be deducted from the attorney's fee award.

Plaintiff is likewise not entitled to attorneys' fees and costs associated with her discovery abuses, including time spent on correspondence related to these issues, expenses associated with Plaintiff's July 6, 2009 deposition – which was conducted to mitigate the damage done by Plaintiff's discovery abuses – and time spent on related post-trial briefing.  Rather than comb through the time records supplied by Plaintiff in an attempt to estimate what portion of billed time relates to these discovery abuses, the compensable number of hours will be reduced by the seventy hours suggested by Defendants.  See Robinson, 2009 WL 3109846, at *22 (estimating a reasonable reduction of fees rather than "comb[ing] through every entry, comparing and contrasting various lawyers' entries for each disputed event").  Plaintiff supplies no estimate of the hours Ms.

---

[10]  In calculating this figure, the Court used the rates of $245 per hour for partner time and $220 per hour for associate time supplied by Defendants in their January 27, 2010 submissions.  Based on Defendants' time records, the Court finds that 80 hours spent preparing and briefing the motion for discovery sanctions, 10 hours for each letter, 4 hours spent conducting Mugavero's July 6, 2009 deposition, and 8 hours spent in preparation for that deposition are reasonable.  Forty hours spent briefing Defendants' motion will be credited at the partner rate and the remaining 40 hours will be credited at the associate rate.  All other hours are attributed to Mr. Baken and are, accordingly, credited at the partner rate.  The Court also awards $3,618.00 in costs associated with videotaping and transcribing Plaintiff's July 6, 2009 deposition.

Kelly spent addressing their discovery misconduct, and the Court finds that seventy hours is a reasonable estimate. The costs award will also be reduced by $738.28, reflecting Plaintiff's cost to obtain a copy of the July 6, 2009 deposition transcript.

### C.      Total Fee Award

For the reasons set forth above, Plaintiff's attorneys' fee request of $614,616.51 is reduced by $38,119.67 for improperly billed clerical tasks, travel time, and time billed by Plaintiff's counsel that relates to Plaintiff's discovery abuse. A further $18,704 reduction is imposed as a discovery sanction. The Court's deduction for time spent on clerical matters represents 5 hours and 20 minutes at a rate of $350 per hour, and the time related to discovery abuse represents 70 hours at the same rate, totaling $26,366.67. The deduction for travel time amounts to 67 hours and 10 minutes at the half rate of $175 per hour, totaling $11,754.17. The additional reduction of $18,704 is Ms. Kelly's share of the $37,408 sanction award, which represents the reasonable attorneys' fees Defendants are entitled to for the time defense counsel expended as a result of Plaintiff's discovery abuses.[11]   Accordingly, attorneys' fees will be awarded to Plaintiff in the amount of $557,791.67, which includes fees for work performed on post-trial motions.[12]

---

[11]  Plaintiff's share of the amount due Defendants as a discovery sanction will be deducted from the damages award in an amended judgment, which will be issued by this Court after the Clerk of the Court has performed required interest calculations.

[12] See Donovan v. CSEA Local Union 1000, 784 F.2d 98, 106 (2d Cir. 1986) ("The fee application is a necessary part of the award of attorneys' fees. If the original award is warranted, we think that a reasonable amount should be granted for the time spent in applying for the award.")

### III.   DISBURSEMENTS AND COSTS

In addition to attorneys' fees for the hours reasonably expended, a prevailing party is entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg, 143 F.3d at 763 (internal quotation marks omitted).  Under federal civil rights law, costs awarded to successful parties may "include not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal marketplace." Robinson, 2009 WL 3109846, at *34-35 (citing U.S. Football League, 887 F.2d at 416 (holding that reasonable, identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including photocopying, travel and telephone costs); Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001).  Recovery is not permitted, however, for costs associated with routine office overhead. See LeBlanc-Sternberg, 143 F.3d at 763.

Plaintiff seeks a costs award of $13,329.97, reflecting filing fees, process server fees, subpoena fees, deposition transcripts, court transcripts, exhibit preparation, mailings, photocopies, and travel.  (Pltf. Br. at 13)  Defendants do not object, except as to the $738.28 charge for Plaintiff's July 6, 2009 deposition transcript.  The Court finds these costs reasonable, and accordingly, $12,591.69 in costs and disbursements is allowed, reflecting a reduction for the costs associated with the July 6, 2009 transcript.

IV.     **INTEREST**

        Plaintiff requests pre-judgment interest on the lost wages and lost fringe benefits awards and post-judgment interest on the entire damage award. The Court will award both types of interest.

        Under 28 U.S.C. § 1961, a plaintiff is entitled to post-judgment interest on "any money judgment in a civil case recovered in a district court."  Moreover, as the Second Circuit has made clear, where "damages awarded to the plaintiff [in a Title VII action] represent compensation for lost wages, 'it is ordinarily an abuse of discretion <u>not</u> to include pre-judgment interest.'" [13] <u>Gierlinger</u>, 160 F.3d at 873 (quoting <u>Saulpaugh v. Monroe Comty. Hosp.</u>, 4 F.3d 134, 145 (2d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1164 1994)).  Awarding pre-judgment interest prevents the "defendant employer from attempting to 'enjoy an interest-free loan for as long as it can delay paying out back wages,' and helps to ensure that the plaintiff is meaningfully made whole." <u>Id.</u> (internal citation omitted) (also citing <u>Loeffler v. Frank</u>, 486 U.S. 549, 558 (1988) ("Prejudgment

---

[13] Defendants err in arguing that because the Plaintiff's attorneys' fee award is calculated according to current hourly rates, it is improper for the Court to grant pre-judgment interest on the lost wages award. (Def. Br. at 24)  The two awards are distinct.  While interest on an <u>attorneys' fee</u> award calculated at current hourly rates might constitute an inappropriate windfall for the <u>attorney</u>, Plaintiff is entitled to full compensation for her injuries and losses, which in this Circuit includes pre-judgment interest on lost wages. The cases cited by Defendants (Def. Br. 24) address only attorneys' fees and are therefore inapposite.  <u>See</u> <u>Savoie v. Merchants Bank</u>, 166 F.3d 456, 464 (2d Cir. 1999) (holding that the district court adequately compensated counsel by applying current hourly rates and properly declined to grant interest on the <u>fee award</u>); <u>Huntington Branch, N.A.A.C.P. v. Town of Huntington</u>, 961 F.2d 1048, 1049 (2d Cir. 1992) (holding generally that "a court may not enhance a <u>fee award</u> any more than necessary to bring the fee within the range that would attract competent counsel" (emphasis added)); <u>In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.</u>, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) (holding that pre-judgment interest should not be added to an <u>attorneys' fee award</u> based on current hourly rates).

interest, of course, is an element of complete compensation.")).  See also Miner v. City of Glens Falls, 999 F.2d 655, 662 (2d Cir. 1993) (upholding pre-judgment interest award in §1983 case).

   Where, as here, a judgment is based on both federal and state law, courts apply the federal interest rate set forth in 28 U.S.C. § 1961(a).  See Zakre v. Norddeutsche Landesbank Girozentrale, 541 F. Supp. 2d 555, 570 (S.D.N.Y. 2008); Thomas v. iStar Fin. Inc., 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007).  Section 1961(a) sets the rate for pre-judgment interest at the average annual Treasury bill rate of interest between the date of the adverse actions and the date of judgment.  Courts in this district recognize the importance of applying the correct methodology and follow the method described in McIntosh v. Irving Trust Co., 873 F. Supp. 872, 884 (S.D.N.Y. 1995), in calculating the appropriate rate:  "[f]irst, the award should be divided pro rata over the appropriate time period[; s]econd, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied[; and t]hird and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually."  Id. (citing Thomas, 508 F. Supp. 2d at 264).  "The compounding is appropriately done at the end of the year so that interest is not awarded on amounts that theoretically would not yet have been earned."  McIntosh, 873 F. Supp. at 884 (citing Chandler v. Bombardier Capital Inc., 44 F.3d 80, 84 (2d Cir. 1994)).

   Accordingly, the Clerk of Court is directed to use this methodology to calculate the interest on the lost wages award of $421,656.95 and the fringe benefits award of $11,658.22, from October 6, 2002 to October 5, 2009, when judgment was

entered.  Post-judgment interest on the entire amended damages award of $789,611.17[14]

will be added according to the weekly average one-year constant maturity Treasury yield,

as published by the Federal Reserve System for the calendar week preceding the date of

judgment.  28 U.S.C. § 1961(a).

## CONCLUSION

To the extent and for the reasons stated above, Plaintiff's motion for

attorneys' fees and costs (Docket No. 102) is GRANTED in the amount of $557,791.67

in attorneys' fees and $12,591.69 in costs.

The Clerk of the Court is directed to calculate interest on Plaintiff's

revised damages award in accordance with 28 U.S.C. § 1961, as explained above.

Dated: New York, New York
       February 9, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[14] This amount reflects the $18,704 discovery sanction imposed on Plaintiff.

27